UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,    :     CASE NO.  12-Civ-23588-HUCK
     Plaintiff,          :
v.                       :
                           :
SILA LUIS, et al.,         :
     Defendant.        :
. . .. . . . . . . . . . . . . . . . . . . . . . . . . . :

### MOTION TO MODIFY THE RESTRAINING ORDER
### TO RELEASE ASSETS FOR THE DEFENSE OF
### THE RELATED CRIMINAL CASE

This civil case was filed by the government against Sila Luis and two co-defendants alleging Medicare fraud in the amount of $45 million, DE #1 at 8, the same course of conduct that forms the basis of the contemporaneously filed indictment now pending before Judge Cooke: *USA v. Sila Luis, et al.*, 12-CR-20751-Cooke (S.D. Fla.).

Through this civil case, the government has obtained an *ex parte* temporary restraining order (TRO) that prohibits her  "from alienating, withdrawing, transferring, removing, dissipating, or otherwise disposing of, in any manner, any moneys or sums presently deposited, or held on behalf of any Defendant by any financial institution, trust fund, or other financial entity, public or private, that are proceeds or profits from Defendants' Federal health care offenses *or property of an equivalent value* of such proceeds or profits, **including but not limited to**" a series of accounts and properties identified in the TRO.  DE #11 at 2-3 (bold in original, italics added).  Many of the assets restrained are not traceable to Medicare revenues.  Thus, the TRO freezes up to $45 million of the defendant's assets, including assets traceable to the alleged offense, as well as *"property of an equivalent value,"* otherwise

known as "substitute assets."

Most of the assets frozen in this case are accounts or properties in Florida, under defendant's own name or in the name of an immediate family member.  The properties and accounts she owns in Mexico were voluntarily disclosed to the Probation Office, the court and the government by her or through her defense counsel. As proffered in open court during her pretrial detention hearing in the criminal case, Ms. Luis does not own assets totaling $45 million, so the TRO effectively freezes **all** of the assets of defendant Sila Luis, even those that are not traceable to the alleged Medicare fraud.

The government is seeking to convert the TRO into a preliminary injunction pending the outcome of the criminal case before Judge Cooke.  A hearing has been set for November 28.  By using this civil case to enjoin defendant Sila Luis from using **any** of her assets now, the government is making it impossible for defendant Sila Luis to use any of her own assets, even **untainted** assets, to retain counsel of choice in the criminal case before Judge Cooke.

To obtain the TRO and the proposed injunction, the government has invoked 18 USC § 1345, which provides:

> (a)(1) If a person is--
> **(A)** violating or about to violate this chapter or section 287, 371 (insofar as such violation involves a conspiracy to defraud the United States or any agency thereof), or 1001 of this title;
> **(B)** committing or about to commit a banking law violation (as defined in section 3322(d) of this title); or
> **(C)** committing or about to commit a Federal health care offense;
>
> the Attorney General may commence a civil action in any Federal court to enjoin such violation.

**(2)** If a person is alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of a banking law violation (as defined in section 3322(d) of this title) or a Federal health care offense or property which is traceable to such violation, the Attorney General may commence a civil action in any Federal court--

    **(A)** to enjoin such alienation or disposition of property; or

    **(B)** for a restraining order to--

        **(i)** prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value; and

        **(ii)** appoint a temporary receiver to administer such restraining order.

**(3)** A permanent or temporary injunction or restraining order shall be granted without bond.

**(b)** The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.

## SUMMARY OF THE ARGUMENT

Although the Eleventh Circuit has held that section 1345 authorizes the restraint of tainted **and untainted**, substitute assets, *i.e.*, "property of equivalent value," *United States v. DBB, Inc.*, 180 F.3d 1277 (11th Cir. 1999), Ms. Luis maintains that section 3145 does not authorize the continued restraint of assets needed for legal expenses in the related criminal case. To the extent that it is so applied, it violates her rights under the Fifth and Sixth Amendments.

## POINTS AND AUTHORITIES

1. **Section 3145 is limited to restraining assets in an amount no greater than the actual "loss" traceable to the health care fraud**.  The civil complaint and indictment allege a multi-object conspiracy, including a kick-back scheme.  However, a mere kick back does not necessarily constitute "health care fraud," much less generate a loss that will later give rise to a forfeiture.  *See United States v. Medina*, 485 F.3d 1291, 1304 (11th Cir. 2007) ("We find these claims fraudulent not because they were based on illegitimate prescriptions, but because the patients or doctors received kickbacks after Guerra certified to Medicare that she would not pay such remunerations. There was no evidence presented that these claims were not medically necessary. Even though Tanya Moore testified that Medicare would not pay a claim if they knew parties were receiving kickbacks, this is not sufficient to establish a loss to Medicare.).

So the first step is for the court to determine how much of the alleged $45 million in Medicare revenues is traceable to health care fraud (18 U.S.C. § 1349).  *See United States v. Brown,* 988 F.2d 658, 664 (6th Cir. 1993) ("The district court froze all of the Browns' funds held at any financial institution except for an allowed withdrawal of $10,000 per month for business expenses. In doing so, the district court failed to distinguish between the proceeds from the alleged Medicare fraud and untainted funds from the seventy-five percent of the Browns' business that is unrelated to Medicare claims. As a result, we remand the case so that the district court can reevaluate the nature of the assets that it froze. The court may freeze

only those assets related to the alleged fraud."); *United States v. William Savran & Associates, Inc.*, 755 F.Supp. 1165, 1184 (E.D.N.Y. 1991) (hearing must resolve whether "some or all of the amounts on deposit in the [restrained] account . . . are not proceeds [of the alleged fraud].").

As to the burden of proof needed to restrain assets (particularly those needed for her defense), defendant submits that the government must meet the "beyond a reasonable doubt" standard; alternatively, the "clear and convincing evidence" standard; alternatively, establish a "substantial likelihood of success" on the forfeiture counts; at a minimum, establish that it is ***likely to succeed*** in obtaining forfeiture of the restrained assets, a standard higher than mere "probable cause." *See generally United States v. Siriam,* 147 F.Supp.2d 914, 937-38 (N.D. Ill. 2001) *(*"to establish a likelihood of success as required by Section 1345, the Government must show ***by a preponderance of the evidence*** that a predicate fraud offense has been or is being committed.").

**2. Section 3145 only enjoins transactions that conceal or dissipate assets, not ordinary transactions like the payment of attorney's fees**.  The purpose of the statute is to insure that the defendant is not wasting assets or attempting to hide them from the government, not to punish or impoverish the defendant pending a final determination of the merits of the underlying criminal case. *See United States v. Payment Processing Center, LLC.,* 435 F.Supp.2d 462, 466-67 (E.D. Pa. 2006) ("§ 1345(a)(2) must be read as granting the Attorney General additional authority to restrain property . . . when such property is being

*concealed or dissipated.*); *United States v. Speqtrum, Inc.*, 2012 WL 517526 (D.D.C. 2012) ("It is not disputed here that the "purpose of freezing assets in this case is to preserve the status quo and prevent those assets from being *dissipated or diverted* during the pendency of the case.").

While the litigation is pending, the payment of ordinary living expenses and reasonable attorneys fees is contemplated. *See United States v. Fang*, 937 F. Supp. 1186, 1200 (D. Md. 1996) ("[I]t is always the case that the Court is in a position to minimize potential harm to a defendant by exercising its discretion to allow the defendant access to sufficient funds to meet his or her needs for living expenses, counsel fees, and by limiting the duration of the freeze.)*; United Sates v. Jamie*, 2011 WL 145196 (S.D. W.Va. 2011) ("Defendants' interest in the advice of counsel to ensure a full and fair hearing on the merits of this [section 1345] case warrants a release of a portion of the frozen assets to satisfy attorneys' fees and costs."); *United States v. Payment Processing Center, LLC.,* 439 F.Supp.2d 435 (E.D. Pa. 2006); (granting motion for attorney fees even after the TRO was converted to a Stipulated Preliminary Injunction Order "in a § 1345 action that features the looming presence of an ongoing, parallel criminal probe.")

Indeed, section 3145(a)(2)(B)(ii) authorizes the court to "appoint a temporary receiver to administer such restraining order," confirming that section 3145 was not meant to prohibit all financial transactions, only those designed to squander or secret the assets.

That 18 U.S.C. § 1345 allows for payment of attorneys fees is consistent with the

restraint of assets in other civil contexts. *See, e.g., SEC v. Dowdell*, 175 F.Supp.2d 850, 855-56 (W.D. Va. 2001) ("This court's central concern is the fairness of the proceedings. The court does not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel. This is a complex legal matter, and lawyers are essential to the presentation of issues related to it. Therefore, the court is ordering the respective attorneys to file with the court, within the next ten days, reasonable estimates of the fees necessary to take them through the hearing on the preliminary injunction. If the estimates are reasonable, the court will approve them."); *SEC v. Duclaud Gonzalez De Castilla,* 170 F.Supp.2d 427, 430 (S.D.N.Y. 2001) (modifying restraining order to permit the payment of legal fees and disbursements); *SEC v. International Loan Network, Inc.,* 770 F.Supp. 678, 680 (D.D.C.1991) (mentioning that it had granted a modification of the asset freeze to permit defendants to retain counsel on their behalf)

And construing section 1345 to exempt from restraint assets needed to retain counsel of choice avoids the constitutional implications of depriving a defendant of counsel of choice and due process of law:

> Any doubt that might be prompted by the arguments for that other reading should, however, be resolved against it under the rule, repeatedly affirmed, that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."

*Jones v. United States*, 526 U.S. 227, 240 (1999) (quoting *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909)); *accord United States v.*

*Stone* 139 F.3d 822, 836 (11th Cir. 1998) ("The doctrine of constitutional doubt permits the court to read a statute that is genuinely susceptible to two constructions ... after its complexities are unraveled in a manner that avoids a serious likelihood that the statute will be held unconstitutional.").

**3.   The Fifth and Sixth Amendments prohibit the restraint of "substitute assets" needed for legal expenses in the related criminal case.**   Although *United States v. DBB, Inc.*, 180 F.3d 1277 (11th Cir. 1999), held that section 1345 authorizes the restraint of tainted property and "property of equivalent value," the Eleventh Circuit has not addressed the constitutional implications of restraining such ***un***tainted, "substitute assets" when needed to finance the defense of a criminal case.

Nor has the issue been squarely addressed in the context of a restraining order in a criminal case under 21 U.S.C. § 853(e).  However, in *United States v. Bissell*, 866 F.2d 1343 (11th Cir. 1989), *cert. denied*, 493 U.S. 876 (1989), the Eleventh Circuit warned that restraining untainted assets needed to retain counsel would have constitutional implications. In Upholding the restraint of *tainted* assets against a constitutional challenge, the Eleventh Circuit warned:

> There is the possibility that prosecutors will seek broad, sweeping restraints recklessly or intentionally encompassing legitimate, nonindictable assets. The loss of such legitimate assets would improperly cripple a defendant's ability to retain counsel.
>
> *   *   *
>
> If the defendant proves at trial or in a collateral proceeding that prosecutors, acting in bad faith, ***restrained assets which they knew or should have known to have no connection with criminal activity, a conviction would be in great***

*jeopardy due to a denial of the Sixth Amendment right to counsel of choice*.

*Id*. at 1355 (emphasis added).

Relying on *Bissell*, the Eleventh Circuit in *United States v. Kaley*, 677 F.3d 1316 (11th Cir. April 26, 2012) ("*Kaley II*"), *petition for certiorari filed,* Docket No. 12-464 (October 11, 2012), held that "a defendant who is entitled to a pretrial due process hearing with respect to restrained assets may challenge the nexus between those assets and the charged crime . . .," implying that assets not traceable to the charged crime cannot be restrained if needed to retain counsel of choice.   *Id*. at 1327 (district court modified restraining order entered pursuant to 21 USC 853(e) to release from restraint assets not traceable to the crimes charged); *see also United States v. Kaley*, 579 F.3d 1246 (11th Cir. 2009) ("*Kaley I*") (same). Admittedly, it is not altogether clear whether the *Kaley* decisions turned on the constitutional implications of restraining assets not traceable to the offense or instead turned on a construction  of 21 U.S.C. § 853(e) limiting pretrial restraints to tainted assets only.

In the Fourth Circuit, where substitute assets *are* subject to pretrial restraint under 21 U.S.C. § 853(e), *In re Billman,* 915 F.2d 916, 921 (4th Cir.1990), the Court of Appeals has held that the "[while] . . .there is no Sixth Amendment right for a defendant to obtain counsel using tainted funds, *[the defendant] still possesses a qualified Sixth Amendment right to use wholly legitimate funds to hire the attorney of his choice*:

> When assets are seized pursuant to civil forfeiture, the hearing right applies only insofar as the civil seizures affect a defendant's right to select his counsel of choice in a related criminal case, not in the civil forfeiture case itself.  And the hearing is certainly not the forum to reach a definitive conclusion on the

> legality of each asset seized.   Instead, a brief hearing will provide an
> opportunity for Farmer to prove by a preponderance of the evidence that the
> government seized untainted assets without probable cause and that he needs
> those same assets to hire counsel.   The government for its part may present
> evidence that Farmer has other substantial assets with which to hire attorneys
> and/or evidence of probable cause to believe that the seized assets are tainted
> and forfeitable.

*United States v. Farmer*, 274 F.3d 800, 804, 805-06 (4ᵗʰ Cir. 2001) (emphasis added, citations

omitted), *cert. denied*, 543 U.S. 1022 (2002).  *Accord United States v. Najjar*, 57 F.Supp.2d

205, 209-210 (D. Md. 1999) ("Defendant's Sixth Amendment right to counsel is simply more

important than the Government's interest in the untainted portion of Defendant's substitute

property. Accordingly, the court will modify its pre-trial restraining  order to the extent that

the  Government  has  not  established  that 4603  Brinkley  Road  is  attributable  to  assets

forfeitable pursuant to § 1963(a).").

In  analogous  civil  contexts,  district  courts  have  likewise  concluded  that  the  Fifth

and/or Sixth Amendment requires that ***untainted*** assets needed to retain counsel of choice

be exempt from restraint:

> [The criminal defendant] has demonstrated—and the Commission does not
> dispute—that without advancement of the frozen funds, she will be unable to
> pay defense counsel's fees in the criminal action. Under such circumstances,
> the Commission is required to demonstrate that the frozen funds are traceable
> to fraud.
>
> * * *
>
> Were [the criminal defendant] seeking to use frozen funds to pay her defense
> costs in a civil action, the fact that potential disgorgement in this case exceeds
> the amount of money that has been frozen might be sufficient to prevent this
> Court from releasing the funds.  However, [the criminal defendant] seeks
> advancement of fees and expenses only in the criminal action against her.
> While [the criminal defendant] may not be advanced frozen funds traceable to

-10-

the fraud she helped to perpetrate, there has been no showing that all of the funds currently restrained are traceable to fraud.

*SEC v. FTC Capital Markets, Inc.*, 2010 WL 2652405 at *7 (S.D.N.Y. 2010)

Although a court may impose an asset freeze in a civil case, notwithstanding a companion criminal case, these circumstances dictate that the court pay particular attention to the defendant's Fifth and Sixth Amendment rights. . . .

Accordingly, in light of the fact that my order freezing [the criminal defendant's] personal assets may hinder his ability to obtain counsel of choice in the related criminal case, I conclude that that order may not be continued through trial in the absence of an adversary hearing as to whether (1) the SEC has established a *prima facie* case of securities law violations, and (2) the SEC has made a showing that the frozen assets are traceable to fraud

*SEC v. Coates*, 1994 WL 455558 (S.D.N.Y. 1994); *accord SEC v. McGinn*, 2012 WL 1142516 (N.D.N.Y. 2012) (releasing untainted assets needed to retain counsel of choice).

Admittedly, in *United States v. American Therapeutic Corporation,* 797 F.Supp.2d 1289, 1293-94 (S.D. Fla. 2011), Judge Martinez refused to release from restraint substitute assets needed to retain counsel of choice, notwithstanding a Sixth Amendment challenge. Judge Martinez concluded that "[t]he lawful freezing of Defendant[]'s assets does not implicate her Sixth Amendment right to counsel in this civil case or in the criminal case," based on a singular quotation from the Supreme Court's decision in *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 626 (1989):

"[T]he Government does not violate the Sixth Amendment if it seizes ... [ill-gotten gains] and refuses to permit the defendant to use them to pay for his defense."

797 F.Supp.2d at 1293-94.  It appears that Judge Martinez overlooked that in *Caplin &*

*Drysdale*, the Supreme Court only addressed the constitutional implications of restraining *tainted* assets, not *substitute* assets. *Caplin & Drysdale* held that the restraint of *tainted* assets (*i.e.*, traceable to the offense) would not violate the defendant's rights because the law treats those assets (*i.e.*, "ill-gotten gains") as having never been owned by the defendant in the first place. Substitute assets, by contrast, are not "ill-gotten gains," so substitute assets are undoubtedly the defendant's assets *ab initio*. The Supreme Court has never approved the pretrial restraint of substitute assets. Judge Martinez reached his conclusion by erroneously conflating *tainted* assets and *substitute* assets. *See generally United States v. Patel*, --- F.Supp.2d ----, 2012 WL 3629355 (W.D. Va. 2012) (canvassing the case law but not reaching the question of whether the Sixth Amendment requires that court unfreeze substitute assets in criminal case if needed to retain counsel of choice).

## CONCLUSION

Defendant Luis submits that the Fifth and Sixth Amendments, individually and in combination, require that the court exempt from restraint and forfeiture those assets needed for (and ultimately expended on) her legal defense to the charges pending before Judge Cooke. By freezing even a defendant's *untainted* assets before trial, the government not only "cripple[s] a defendant's ability to retain [private] counsel," *Bissell*, 866 F.2d at 1355, but also takes from her the funds she would otherwise invest in her defense for the best and most industrious investigators, experts, paralegals, and law clerks, to at least attempt to match the litigation support available to the United States Attorney's Office. It means no daily copy

of the trial transcripts that defense counsel could use to better confront witnesses and prepare for closing argument, a resource often exploited by the prosecution. The freeze of substitute assets thus creates an even greater imbalance of power, further tipping the scales in favor of the government.

Surely due process would not tolerate a law limiting how much of a defendant's own assets she can spend on her defense. As the Supreme Court observed in a case holding that due process required the state to pay for a psychiatric expert for an indigent defendant:

> it is difficult to identify any interest of the State, other than that in its economy, that weighs against recognition of this right. The State's interest in prevailing at trial-unlike that of a private litigant-is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases. Thus, also unlike a private litigant, a State may not legitimately assert an interest in maintenance of a strategic advantage over the defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained. We therefore conclude that the governmental interest in denying Ake the assistance of a psychiatrist is not substantial, in light of the compelling interest of both the State and the individual in accurate dispositions.

*Ake v. Oklahoma,* 470 U.S. 68 (1985). The restraint of substitute assets is effectively a pretrial limit on the amount of her own money a defendant can spend on her defense. The "fiscal cliff" notwithstanding, there is no countervailing tool available to the defendant to limit the government's expenditures in prosecuting her. The Fifth Amendment's guarantee of due process should insure that the government not gain such an unfair leverage in the courtroom.[1]

---

[1]  Due to the short time frame, and because undersigned was out of town on another matter, undersigned has not yet begun the review of the discovery. Accordingly, this motion has addressed the legal issues undersigned previewed for the court at the status conference on

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Ph. (305) 371-6421 – Fax (305)358-2006
E-mail: Srebnick@RoyBlack.com


By:      /s/  Howard Srebnick
HOWARD SREBNICK, ESQ.
Florida Bar No. 919063
*Counsel for Sila Luis*

### CERTIFICATE OF SERVICE

**I  HEREBY  CERTIFY** that the foregoing was electronically filed via CM/ECF ON November 15, 2012.

/s/  Howard Srebnick
HOWARD SREBNICK, ESQ.

---

November 7, 2012.  *See* DE #36 (Minutes of hearing). Undersigned will begin reviewing the thousands of pages of discovery produced by the government this week to prepare a presentation of the facts and an "accounting" of defendant's finances.

-14-